UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

J.D. a disabled minor, by and
with His Next Friend,
MARK E. DAVIS,

       Plaintiffs,

v.                                Case No. 2:09-cv-000139

KANAWHA COUNTY BOARD OF EDUCATION,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This case concerns the efforts of Mr. Mark Davis, in his own right and on behalf of his minor child, J.D., to set aside the decision of a State hearing officer who denied Mr. Davis's request for a continuance of a due process hearing in which Mr. Davis alleged that J.D.'s Individualized Educational Plan ("IEP") violated the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA").  The hearing officer proceeded with the due process hearing in Mr. Davis's absence and rendered a decision.

This civil action is assigned to the Honorable Joseph R. Goodwin, Chief Judge of the United States District Court for the Southern District of West Virginia, and the above pending motion has been referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

Currently pending before the court is a Motion for Summary

Judgment filed by the Board of Education of the County of Kanawha, filed April 17, 2009.  (Docket # 17.)

**Allegations in the Complaint**

On February 17, 2009, J.D., a minor, by and with his next friend, Mr. Davis, filed a *pro* *se* pleading entitled "Petition to Appeal a State Agency Administrative Decision and Order."  (# 2.) In the Petition, Mr. Davis asserts that on April 4, 2008, he filed a request for due process hearing with the West Virginia Department of Education alleging a violation by Defendant regarding J.D.'s educational placement.  (# 2, ¶ 1.)  On July 21, 2008, Mr. Davis filed a motion to continue a hearing scheduled for August 18-22, 2008, because of multiple and significant health problems of Mr. Davis.  (# 2, ¶¶ 2-3.)  On July 21, 2008, Mr. Davis also moved to continue a status conference in an unrelated matter before this court, also because of health concerns related to Mr. Davis, and the motion was granted.[1]  (# 2, ¶ 4.)  On July 22, 2008, the State administrative hearing officer denied Mr. Davis's motion for a continuance.  (# 2, ¶ 5.)  On August 18, 2008, the hearing officer conducted a due process hearing in Mr. Davis's absence and as a sanction.  (# 2, ¶ 6.)  Mr. Davis claims that the hearing officer abused his discretion by denying the motion to continue and

---

[1]  The undersigned indicated to Mr. Davis during the status conference in this matter that the court's granting of a continuance of a status conference in 2:08-cv-00158 is irrelevant in the instant matter and would not be made part of the record to be considered by the court.  (See J.D., et al. v. Kanawha County Bd. of Educ., 2:08-cv-00158, docket # 12.)

2

improperly proceeding with the hearing under the guise of a sanction. (# 2, p. 2.) Mr. Davis, on behalf of himself and J.D., seeks the following relief:

> 1. Set aside the decision of the State agency administrative hearing officer, dated October 17, 2008, in the matter identified as D08-016.
> 2. Further, order that the case be remanded to the State agency for proper administrative hearing with both parties in participation.
> 3. Finally, order that a hearing officer other than the same who issued said decision hear the case.
> 4. Or, in the alternative, allow the Petitioner to proceed with an appeal of the decision itself and according to a briefing schedule established by the Court.

(# 2, p. 3.)

**<u>Arguments of the Parties</u>**

Defendant argues that it is entitled to summary judgment because the underlying due process case is moot. Defendant asserts that J.D. has been removed from public school for more than two years, and it appears that Mr. Davis has no intention of re-enrolling J.D. in public school. Defendant contends that "[e]ven if the student were returned to public school, a new IEP would have to be developed, and the decisions made by the IEP team in 2006 would have little, if any, relevance. There is really no relief that the court can grant to the plaintiff." (# 18, p. 11.) Next, Defendant argues that the hearing officer did not abuse his discretion by declining to grant Mr. Davis an additional continuance. (# 18, pp. 11-15.)

In response, Mr. Davis argues that

> genuine issues of material fact are in dispute,
> specifically the due process rights of a disabled, minor
> party, which the Plaintiffs allege and complain were
> denied by a State agency administrative hearing officer
> in failing to grant an appropriate continuance for a "due
> process hearing" before the State agency and requested by
> the parent of the minor ... who at the time of the
> alleged violation was enrolled in the Defendant's public
> school system.

(# 19, p. 1.)

Mr. Davis further asserts that even though J.D. is not currently enrolled in Kanawha County schools and has not been since October 12, 2006, that does not moot the claim because the time period at issue in his appeal before the hearing officer was March 24, 2006.  Mr. Davis contends that rejecting the claim based on mootness would

> likely chill future pro se, or lawyer-represented cases
> from being appealed from State education agencies and
> county school systems, or, worse still, might cause
> parents to allow their disabled children to remain in
> inappropriate and, perhaps, harmful placement, for fear
> that an appeal might be dismissed, and a motion for
> summary judgment by county school boards summarily
> granted, simply because a child was "after-the-fact"
> removed from the public school placement and placed in a
> private, non-public placement.

(# 19, pp. 9-10.)

Finally, Mr. Davis asserts that the hearing officer abused his discretion in denying his request for a continuance and proceeding to hearing.  Mr. Davis argues that the hearing officer has no right to know the specifics of his medical condition.  Mr. Davis points out that when counsel for Defendant asked for a continuance because of a planned vacation, that request was freely granted without a

4

request for information about counsel for Defendant's vacation.  (#
19, pp. 11-12.)

In reply, Defendant asserts that the only issue before this
court is whether or not the hearing officer abused his discretion
by not granting Mr. Davis's request for a continuance of a hearing
scheduled in August of 2008.  Defendant asserts that there is no
dispute about the underlying facts that lead to the hearing
officer's decision to deny the request for continuance and proceed
with the hearing.  Defendant argues that Mr. Davis failed to
present any evidence to overcome the argument that the case is
moot, noting again that J.D. is not currently enrolled in Kanawha
County schools and was not at the time Mr. Davis filed the due
process complaint.  (# 23, pp. 1-2.)  Defendant contends that Mr.
Davis has failed to show that there are issues of material fact in
dispute bearing on what information the hearing officer had when he
denied the continuance.  (# 23, p. 3.)

**<u>Standard</u>**

Rule 56(c) of the Federal Rules of Civil Procedure provides
that summary judgment "should be rendered if the pleadings, the
discovery and disclosure materials on file, and any affidavits show
that there is no genuine issue as to any material fact and that the
movant is entitled to a judgment as a matter of law." Fed. R. Civ.
P. 56(c).  A district court should enter judgment against a party
who, "after adequate time for discovery ... fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

Stated differently, "[t]o prevail on a motion for summary judgment, [the moving party] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law." <u>Harleysville Mut. Ins. Co. v. Packer</u>, 60 F.3d 1116, 1119-20 (4th Cir. 1995) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).   In determining whether a genuine issue of material fact has been raised, the court

> must construe all inferences in favor of the [nonmoving party].   If, however, the evidence is so one-sided that one party must prevail as a matter of law, we must affirm the grant of summary judgment in that party's favor.   The [nonmoving party] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another[.]"   To survive [the summary judgment] motion, the [nonmoving party] may not rest on their pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue.   [T]he "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

<u>Harleysville</u>, 60 F.3d at 1120 (citations omitted).   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>. 475 U.S. 574, 587 (1986) (citations omitted).

"At bottom, the district court must determine whether the

6

party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." Thompson Everett, Inc. v. National Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995).

**Proposed Findings of Fact**

The court proposes that the presiding District Judge find that the following facts are undisputed:

1.  J.D. was born on February 15, 2001, and has been diagnosed with autism, among other conditions.  (Court's Exhibit 30, p. 4.[2])

2.  J.D. has not attended Kanawha County schools since October 12, 2006, and was withdrawn from school on or about February 6, 2007. (# 17-2, Affidavit of Sandra Boggs, ¶ 4.)

3.  On April 3, 2008, Mr. Davis filed a due process complaint request challenging an IEP developed for J.D. on March 24, 2006, and May 17, 2006, which was assigned the docket number D08-016. (Court's Exhibit 1; Court's Exhibit 30, p. 19.)

4.  Mr. Davis challenged the IEP because it failed to provide a one-on-one aide for J.D. and occupational therapy as a related service.  (# 30, p. 3.)

---

[2]  By order entered November 2, 2009, the court designated the record in this matter. (## 25, 26.)  To the extent the court refers to page numbers in the documents contained in the record, the court refers to the original pagination of those documents rather than those assigned by the court's Electronic Case Filing system.

5.  By letter dated April 7, 2008, the hearing officer appointed to
the matter, James Gerl, wrote to both Mr. Davis and Defendant
requesting that they contact each other to determine a mutually
agreeable time for a prehearing conference.  (Court's Exhibit 2.)

6.  By letter dated April 11, 2008, Mala A. Bumgardner, Secretary
in the Office of General Counsel of Kanawha County Schools, wrote
to the hearing officer indicating she had attempted several times
to contact Mr. Davis, but was unsuccessful.  She suggested five
dates when Defendant was available for the prehearing conference.
(Court's Exhibit 3.)

7.  On April 14, 2008, the hearing officer wrote to both Mr. Davis
and Defendant indicating that Mr. Davis had not provided dates for
the prehearing conference.  The hearing officer suggested dates and
instructed Mr. Davis to notify him immediately as to when he was
available. The hearing officer scheduled the due process hearing
for May 27-30, 2008.  (Court's Exhibit 4.)

8.  By letter dated April 15, 2008, Defendant's counsel wrote to
the hearing officer, copying Mr. Davis, and stated that he had
spoken with Mr. Davis, and the parties agreed the prehearing
conference call would be conducted on April 23, 2008, at 11:45 a.m.
(Court's Exhibit 5.)

9.  On April 16, 2008, counsel for Defendant filed a Motion to
Continue Hearing and Extend Decision Due Date.  In the motion,
Defendant's counsel asked that the hearing scheduled for May 27,

2008, be continued because counsel for Defendant had scheduled a vacation for that week.  (Court's Exhibit 6; Court's Exhibit 30, pp. 13-14.)

10.  On April 18, 2008, Defendant filed a motion to dismiss, which was later denied by the hearing officer.  (Court's Exhibit 7.)

11.   The  hearing  officer  conducted  a  prehearing  telephone conference on April 23, 2008 (attended by Mr. Davis and counsel for Defendant), and  entered  a  prehearing  order  on  April  25,  2008. Defendant's motion to continue was not opposed by Mr. Davis, and the hearing officer set the due process hearing for June 24-27, 2008.  The prehearing order directed that the parties file a joint prehearing memorandum on or before June 10, 2008.  (Court's Exhibit 8; Court's Exhibit 9; Court's Exhibit 30, p. 15.)

12.  By letter dated June 3, 2008, counsel for Defendant wrote to Mr.  Davis,  copying  the  hearing  officer,  and  suggested  that  Mr. Davis prepare the initial draft of the prehearing memorandum and provide a copy to him by June 9, 2008, after which counsel for Defendant would insert Defendant's portion and submit it to the hearing officer.  (Court's Exhibit 12.)

13.  On June 10, 2008, Mr. Davis filed a Motion to Extend Due Date for Filing Joint Pre-Hearing Memorandum by three days.  (Court's Exhibit 13.)

14.  By letter dated June 10, 2008, counsel for Defendant wrote to the hearing officer, copying Mr. Davis, and stated that he had

received a letter from Mr. Davis indicating he was unable to
prepare his portion of the prehearing memorandum and had suggested
a meeting on June 13, 2008.  Because counsel for Defendant was
unavailable on that date, he requested that Mr. Davis complete his
portion of the pretrial memorandum as soon as he was able.
(Court's Exhibit 14.)

15.  On June 13, 2008, counsel for Defendant wrote to Mr. Davis,
copying the hearing officer, stating that a list of witnesses was
to be provided to each party on or before June 17, 2008.  Counsel
indicated his intent to deliver Defendant's proposed exhibits and
witness list to Mr. Davis's home sometime that day and stated he
would be happy to accept Mr. Davis's witness list and copies of
proposed exhibits at that time.  In the alternative, Mr. Davis
could deliver them to counsel for Defendant's office.  (Court's
Exhibit 15.)

16.  On June 13, 2008, the hearing officer wrote to the parties
stating that he had received Mr. Davis's motion to extend the due
date for the prehearing memorandum and correspondence from counsel
for Defendant.  The hearing officer observed that the parties were
having difficulty preparing the prehearing memorandum for several
reasons.  The hearing officer wrote that he was "not convinced that
the parties are putting sufficient effort into this important
prehearing document.  Because of the intervening vacation of
counsel for the schools and the situation requiring the parent to

10

address medical needs of the student, however, I am reluctantly granting the motion." (Court's Exhibit 28.)  The hearing officer directed that Mr. Davis should immediately send his portion of the prehearing memorandum to Defendant and that the parties must submit the prehearing memorandum on or before June 17, 2008.  The hearing officer also imposed deadlines for submitting exhibits and directed Defendant to notify Mr. Davis and the hearing officer regarding the location of the hearing.  (Court's Exhibit 28.)

17.  By letter dated June 17, 2008, from Mr. Davis to Defendant's counsel, copying the hearing officer, Mr. Davis stated that he had been under the care of two physicians since June 11, 2008, and was "very ill." (Court's Exhibit 16.)  Mr. Davis indicated that he was advised by one physician not to be present when counsel for Defendant delivered documents to his home, and, as a result, requested that Defendant not deliver documents to his home.  In addition, Mr. Davis stated that he needed "to move the hearing officer for an indefinite continuance of matters I have currently before him because of advice from physicians and others to cease, at least temporarily, all pro se legal activities for my personal health reasons." (Court's Exhibit 16.)

18.  On June 17, 2008, counsel for Defendant wrote to the hearing officer, copying Mr. Davis, stating he had received Mr. Davis's June 17, 2008, letter, and had no objection to continuing the case. (Court's Exhibit 17.)

19.  On June 17, 2008, the hearing officer wrote to both parties acknowledging receipt of Mr. Davis's June 17, 2008, letter.  The hearing officer stated that "there are time deadlines in these hearings for good reasons." (Court's Exhibit 18.) The hearing officer further stated that he could not

> grant a continuance unless the parent also files a **motion to extend my decision deadline**.  If having the hearing scheduled for next week could jeopardize the parent's health, the parent should **immediately** send me a request for an extension of my decision deadlines, **including** specific facts about the exact nature of his medical condition, which physicians have advised him not to proceed in these matters and why they gave him that advice, and the exact short amount of time needed until the parent can either obtain legal counsel or else resume participation as a pro se litigant.  I do not have the option of continuing these matters indefinitely as the parent requests.  While I do not wish to cause the parent physical harm, the timelines of these cases serve important public policy concerns and only a short continuance would be appropriate.

(Court's Exhibit 18) (emphasis in original).  The hearing officer encouraged the parties to convene a telephone status conference or prehearing conference with him immediately.  (Court's Exhibit 18.)

20.  On June 19, 2008, Mr. Davis filed a Motion to Extend Deadline for Hearing Officer's Decisions.  In the motion, Mr. Davis stated that he was "physically and psychologically ill, and under the care of a physician and psychologist in South Charleston and Charleston, West Virginia, respectively," that he "was placed on medical leave June 11, 2008, and is not expected to return to work in the near future," "has been prescribed various medications" and "has been advised, for physical and mental health reasons, to not proceed

12

further with current pro se litigation involving the School until
such time that the father's health conditions improve." (Court's
Exhibit 19.)  Mr. Davis also asked the hearing officer not to
require him to attend a telephone conference, as such attendance
was likely to aggravate his health conditions. (Court's Exhibit
19.)

21. On June 20, 2008, the hearing officer wrote that Mr. Davis's
motion failed

> to state precisely what his medical conditions are or why
> they necessitate his not participating in the above-
> referenced proceedings.  The parent clarifies that he is
> not requesting an indefinite continuance, but rather only
> a continuance until he is better.  Unfortunately, it is
> impossible to ascertain from the parent's motion when he
> will be in a position to continue.  Hence the request
> really is for an indefinite continuance.  As I have
> explained in previous correspondence, indefinite
> continuances are in opposition to the public policy
> reasons underlying the timelines in these cases.  The
> parent's failure to cooperate negates any basis for a
> lengthy continuance.

(Court's Exhibit 20.)  The hearing officer determined there was
good cause for a continuance, "but only for a short continuance."
(Court's Exhibit 20.)  The hearing officer extended the deadline
for his decision by thirty days, making it due on September 29,
2008. He further stated in his letter that "it is imperative that,
on or before **July 21, 2008**, the parties convene a status conference
by telephone conference call with the parent, counsel for the
schools and the hearing officer participating." (Court's Exhibit
20.) The hearing officer stated that "[t]his deadline is five full

13

weeks after the parent notified the hearing officer of his illness
and plenty of time for the father to either bring his undisclosed
medical condition under control or else retain a lawyer." (Court's
Exhibit 20.)  The hearing officer noted that the parties had been
unable to agree in the past on setting such a telephone conference
and that he would not tolerate "[f]urther shenanigans." (Court's
Exhibit 20.)

22.  On July 14, 2008, counsel for Defendant wrote to Mr. Davis,
copying the hearing officer, and requested that Mr. Davis provide
dates for conducting the telephone conference.  (Court's Exhibit
21.)

23.  On July 21, 2008, counsel for Defendant, copying Mr. Davis,
wrote to the hearing officer and advised him that he had not heard
from Mr. Davis regarding the scheduling of a telephone conference.
(Court's Exhibit 22.)

24.  Mr. Davis filed a Motion to Continue Status Conference and to
Extend Deadline for Hearing Officer's Decision.   The motion is
dated July 21, 2008.  In the motion, Mr. Davis stated that

> since June 10, 2008, [he] has been, and remains, under
> the care of four [sic] (5) medical professionals - one
> family physician, one psychologist, one counselor, one
> pain specialist, and one surgeon - for six adverse
> medical health conditions (four physical and two mental),
> for which he is taking four (4) prescription medications,
> undergoing therapy, and receiving outpatient treatment,
> and on extended medical leave from his full-time
> employment as a college administrator since June 11,
> 2008.

(Court's Exhibit 23, ¶ 1.)  Mr. Davis further stated that he had

been advised "since June 11, 2008, by said health care professionals, to remain on extended medical leave and to not engage in pro se legal activities until released to return to regular work duty." (Court's Exhibit 23, ¶ 2.)  Mr. Davis stated that he had

> provided as much detailed information as possible to said officer regarding his private medical health conditions, which are all protected by federal law and common decency, and reminds the Hearing Officer that on more than one occasion, the officer has summarily granted continuances to the School District for such "causes" as the director of special education's "Myrtle Beach reservations," a special education specialist's need to be "on vacation," or other witnesses simply not being available for reasons some might consider trivial and far less pressing than multiple adverse health conditions ....

(Court's Exhibit 23, ¶ 3, pp. 2-3.)

25.  On July 22, 2008, the hearing officer wrote to both parties stating that they had failed to comply with his order to supply him with the dates for the telephone status conference, which was to occur before July 21, 2008.  The hearing officer noted Defendant's efforts to contact Mr. Davis about scheduling the telephone status conference and the fact that Plaintiff's Motion to Continue the Status Conference and to Extend Deadline for Hearing Officer's decision was received on July 23, 2008[3], after the deadline for conducting the telephone status conference.  The hearing officer therefore denied the motion based on untimeliness and noted that

_____

[3]  This appears to be a typographical error in the hearing officer's letter, which was faxed on July 22, 2008.

there was no good cause for an additional continuance, let alone a continuance of indefinite and unlimited duration.  The hearing officer scheduled the due process hearing for August 18, 19, 20, 21 and 22, 2008.  The prehearing memorandum was due on August 4, 2008. (Court's Exhibit 24.)

26.  The parties did not file a prehearing memorandum by August 4, 2008.

27.  On August 6, 2008, Mr. Davis filed another due process complaint requesting an extension of time of the hearing officer's decision in D08-016.  (Court's Exhibit 25.)

28.  On August 6, 2008, the hearing officer wrote to the parties and stated that they had failed to comply with the filing of a prehearing memorandum.  The hearing officer also noted that he had received a motion to dismiss or continue filed by counsel for Defendant, and that Mr. Davis had not responded.  The hearing officer recounted the "sad procedural history" of the case and the parties' "unusual difficulties in cooperation." (Court's Exhibit 26.)  The hearing officer pointed out that one week before the hearing date rescheduled to June 24-27, 2008, Mr. Davis filed a motion to continue the hearing indefinitely because of unspecified health problems.  The hearing officer denied the request for an indefinite continuance, but did cancel the hearing and direct the parties to arrange a status conference before July 21, 2008, but the parties failed to arrange the status conference by the stated

deadline.  As a result, the hearing officer set the hearing for August 18-22, 2008, with a prehearing memorandum due August 4, 2008.  Mr. Davis requested an indefinite continuance, which was denied and the parties failed to file a prehearing memorandum.  The hearing officer denied Defendant's motion to dismiss or to continue and kept the hearing date of August 18-22, 2008.  The hearing officer directed the parties to file a prehearing memorandum immediately.  (Court's Exhibit 26.)

29.  A portion of the hearing conducted on August 18, 2008, beginning at 9:42 a.m., is attached as Court's Exhibit 27.  Mr. Davis was not present, and Defendant's counsel had not heard from him on this case or received exhibits from him.  Defendant's counsel sent Mr. Davis his portion of the prehearing memorandum before the hearing.  At the hearing, the hearing officer attempted to telephone Mr. Davis and directed Defendant's counsel to contact the other locations where hearings had been held in the past to make sure Mr. Davis was not there.  (Court's Exhibit 27, pp. 5-10.)  The hearing officer was unsuccessful in contacting Mr. Davis, and Defendant's counsel indicated he was not present at the other locations, so the hearing officer decided to proceed without Mr. Davis.  (Court's Exhibit 27, pp. 11-13.)

30.  At the hearing, the hearing officer explained that he declined to grant an indefinite continuance to Mr. Davis because of "timelines on these cases as established by federal law and

regulations, as well as Policy 2419 of the West Virginia Department of Education." (Court's Exhibit 27, pp. 16-17.)

31.  On August 21, 2008, the hearing officer wrote to the parties stating that Mr. Davis had failed to appear for the hearing.  The hearing officer explained that although he denied Defendant's motion to dismiss for failure to prosecute, he imposed a sanction for Mr. Davis's failure to attend by proceeding with the hearing in his absence.  The hearing officer invited Mr. Davis to file a brief and proposed findings of fact and indicated he had ordered that Mr. Davis be provided a copy of the hearing transcript.  (Court's Exhibit 29.)

32.  Mr. Davis did not file a posthearing brief or proposed findings of fact.

33.  On October 17, 2008, the hearing officer issued a decision in which he noted that Mr. Davis had not filed a brief or proposed findings of fact. (Court's Exhibit 30, p. 2.)  The hearing officer concluded that J.D.'s IEP was developed in substantial compliance with the procedural requirements of the IDEA and was reasonably calculated to provide more than trivial or minimal educational benefit for the student.  Thus, J.D.'s IEP provided a free appropriate public education ("FAPE").  (Court's Exhibit 30, pp. 11-12.)

34.  In the decision issued on October 17, 2008, the hearing officer denied Defendant's motion to dismiss and noted the

difficulties in scheduling and conducting the prehearing conference. (Court's Exhibit 30, pp. 13-14.)

35. In the decision issued on October 17, 2008, the hearing officer recounted Mr. Davis's requests for an indefinite continuance, Mr. Davis's absence at the due process hearing and the hearing officer's attempts to contact him at the beginning of the hearing. (Court's Exhibit 30, pp. 15-18.) The hearing officer explained that "[i]n view of the pro se status of the parents and the medical disorders asserted by the father, the hearing officer concluded that dismissal was too harsh a sanction. Instead, it was determined that the appropriate sanction was to proceed with the hearing in the parent's absence." (Court's Exhibit 30, p. 18.)

36. The hearing officer further stated that "[t]he parents were invited to submit a posthearing brief and proposed findings of fact even though they did not appear at the hearing. *** Unfortunately, however, the parents failed to submit any posthearing filings." (Court's Exhibit 30, p. 18.)

**Analysis**

   1. **The nature of the underlying due process case is not moot.**

Pursuant to Article III of the Constitution, courts "may only adjudicate actual, ongoing controversies." Honig v. Doe, 484 U.S. 305, 317 (1988). Generally, a case becomes moot when the issues presented are no longer "live" or "the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S.

19

486, 496 (1969).  "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  <u>United States v. Concentrated Phosphate Expert Ass'n, Inc.</u>, 393 U.S. 199, 203 (1968).  However, claims are not moot if the conduct originally complained of is "'capable of repetition, yet evading review.'"  <u>Murphy v. Hunt</u>, 455 U.S. 478, 482 (1982) (quoting <u>Weinstein v. Bradford</u> 423 U.S. 147, 149 (1975) (<u>per curiam</u>)).  The capable of repetition, yet evading review exception is "limited to the situation where two elements [combine]: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."  <u>Id.</u> (quoting <u>Weinstein</u>, 423 U.S. at 149).  The "heavy burden of persuasion" rests upon the party asserting mootness.  <u>Concentrated Phosphate</u>, 393 U.S. at 203.

Defendant asserts that J.D.

> has been removed from public school for more than two years, and it appears that the parent has no intention of re-enrolling the student in public school.  Even if the student were returned to public school, a new IEP would have to be developed, and the decisions made by the IEP team in 2006 would have little, if any, relevance.

(# 18, p. 11.)

Mr. Davis acknowledges that J.D., who was born on February 15, 2001, and began attending Kanawha County schools in December of 2004, has not attended public school since October 12, 2006, and

20

makes no statement one way or the other about whether Mr. Davis intends to return his child to Kanawha County Schools. (# 19, p. 9; Court's Exhibit 30, p. 4.) Mr. Davis further states that

> [t]he Court's acceptance of the Defendant's position on mootness, regarding the placement of J.D. ... would likely chill future pro se, or lawyer-represented cases from being appealed from State education agencies and county school systems, or, worse still, might cause parents to allow their disabled children to remain in inappropriate and, perhaps, harmful placement, for fear that an appeal might be dismissed, and a motion for summary judgment by county school boards summarily granted, simply because a child was 'after-the-fact' removed from the public school placement and placed in a private, non-public placement.

(# 19, pp. 9-10.)

Mr. Davis does not unequivocally state that he has no intention of returning J.D., who is elementary school age, to Kanawha County schools. J.D. certainly is eligible to return to Kanawha County schools if he wishes, and, as a result, there is a "reasonable expectation that the conduct giving rise to this suit will recur ...." Daniel R.R. v. State Board of Educ., 874 F.2d 1036, 1040 (5th Cir. 1989) (finding that even though the student was no longer enrolled in the public school system, as a citizen of the State of Texas, he was entitled to a free appropriate education, thus making the controversy at issue surrounding his education capable of repetition). Notably, in Honig, the Court found that although the respondent was not currently enrolled in the public schools and that his counsel was "unable to state affirmatively during oral argument that her client would seek to

21

reenter the state school system," there was a "reasonable expectation that he will exercise his rights under the [statute applicable in that case]." <u>Honig</u>, 484 U.S. at 320 n.6. In the <u>Honig</u> case in particular, the respondent had "sought to vindicate his right to an appropriate education" for several years, and the Court reasoned that "[u]nder these circumstances, we think it not only counterintuitive but also unreasonable to assume that respondent will forgo the exercise of a right that he has for so long sought to defend." <u>Id.</u>

As in <u>Honig</u>, Mr. Davis, on behalf of J.D., has litigated issues in this court related to J.D.'s education for several years.[4] In the instant matter, Mr. Davis challenged the appropriateness of J.D.'s IEP and there certainly is a reasonable expectation that if J.D. were to reenroll, controversy related to the appropriateness of his IEP would again arise. Furthermore, the potentially "recurring controversy will evade review during the effective period" of any IEP developed. <u>Daniel R.R.</u>, 874 F.2d at 1041.

Thus, based on undisputed facts, the court proposes that the presiding District Judge find that Plaintiffs' case is not moot.

---

[4] <u>See</u> <u>i.e.</u>, <u>J.D., et al. v. Kanawha County Bd. of Educ.</u>, 2:08-cv-00158; <u>J.D., et al. v. Kanawha County Bd. of Educ.</u>, 2:06-cv-00485; <u>J.D., et al. v. Kanawha County Bd. of Educ.</u>, 2:06-cv-00167.

**2.   The undisputed facts show that the hearing officer did not violate the IDEA and the applicable regulations in failing to grant Mr. Davis an extension of time or in proceeding with the hearing in his absence.**

The IDEA was enacted by Congress to

> ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living [and] to ensure that the rights of children with disabilities and parents of such children are protected . . . .

20 U.S.C. § 1400(d)(1)(A).

The IDEA "grants parents broad procedural rights to enforce the provisions of the Act." Diatta v. District of Columbia, 319 F. Supp.2d 57, 63 (D. D.C. 2004). In particular, "parents who file a grievance are entitled to an impartial due process hearing conducted by the State or local educational agency." Board of Educ. v. Michael M., 95 F. Supp.2d 600, 605 (S.D. W. Va. 2000) (citing 20 U.S.C. § 1415(f)(1)).

Regarding the hearing officer's obligation to conduct an impartial hearing, there are a number of procedural safeguards:

> **(h)** Safeguards
> Any party to a hearing conducted pursuant to subsection (f) or (k), or an appeal conducted pursuant to subsection (g), shall be accorded--
> **(1)** the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities;
> **(2)** the right to present evidence and confront,

23

cross-examine, and compel the attendance of witnesses;
    **(3)** the right to a written, or, at the option of the parents, electronic verbatim record of such hearing; and
    **(4)** the right to written, or, at the option of the parents, electronic findings of fact and decisions, which findings and decisions--
      **(A)** shall be made available to the public consistent with the requirements of section 1417(b) of this title (relating to the confidentiality of data, information, and records); and
      **(B)** shall be transmitted to the advisory panel established pursuant to section 1412(a)(21) of this title.

20 U.S.C. § 1415(h); see also 34 C.F.R. § 300.512 (2008); W. Va. Code St. R. § 126 C.S.R. 16(I).

Pursuant to 34 C.F.R. § 300.515(a) (2008), the hearing officer must hold a hearing and reach a decision not later than forty-five days after the public agency receives the request for hearing. "A hearing or reviewing officer may grant specific extensions of time beyond the periods set out in paragraphs (a) and (b) of this section at the request of either party." Id. at § 300.515(c); W. Va. Code St. R. § 126 C.S.R. 16(K). In addition, "[e]ach hearing and each review involving oral arguments must be conducted at a time and place that is reasonably convenient to the parents and child involved." Id. at § 300.515(d); W. Va. Code St. R. § 126 C.S.R. 16(K).

In L.C. and K.C. v. Utah State Bd. of Educ., 188 F. Supp.2d 1330, 1338 (D. Utah 2002), the United States District Court for the District of Utah acknowledged that 34 C.F.R. § 515(d)[5] "explicitly

---

[5] At the time of the decision in L.C. and K.C., the applicable C.F.R. section was 34 C.F.R. § 300.511(c), that section is now contained at 34 C.F.R. § 300.515(d) and is identical to its predecessor.

24

allows parties to request an extension of time, and **gives hearing officers discretion to grant an extension upon request**." (emphasis added).

"Any party aggrieved by the findings and decision made" by the hearing officer "shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy."  20 U.S.C. § 1415(i)(2)(A).  Regarding this court's obligation when an aggrieved party under the IDEA brings an action in federal court, Chief Judge Goodwin, in <u>Board of Educ. v. Michael M.</u>, 95 F. Supp.2d at 605, observed that:

> [t]his court must conduct an independent review of the administrative record; however, the Fourth Circuit requires courts to give deference to the findings of the administrative hearing officer and has held that "administrative findings in an IDEA case 'are entitled to be considered prima facie correct.'" <u>Hartmann v. Loudoun County Bd. of Educ.</u>, 118 F.3d 996, 1000-01 (4th Cir.), <u>cert. denied</u>, 522 U.S. 1046, 118 S.Ct. 688, 139 L.Ed.2d 634 (1998) (quoting <u>Doyle v. Arlington County Sch. Bd.</u>, 953 F.2d 100, 105 (4th Cir.1991)).

Furthermore, the Supreme Court in <u>Board of Educ. v. Rowley</u>, 458 U.S. 176, 206-07 (1982), established the following two-part test for determining whether a child is receiving a free appropriate education:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed

by Congress and the courts can require no more.
(footnotes omitted).  Regarding the procedures set forth in the
Act, the Court directed that "[t]his inquiry will require a court
not only to satisfy itself that the State has adopted the state
plan, policies, and assurances required by the Act, but also to
determine that the State has created an IEP for the child in
question which conforms with the requirements of § 1401(19)."  Id.
at 207 n.27.

Mr. Davis's only challenge in the instant matter relates to
the hearing officer's decision denying his request for continuance
of the hearing because of Mr. Davis's health problems and the
hearing officer's ultimate decision to proceed with the hearing in
his absence.  The court has carefully reviewed the facts above, and
must recommend that the undisputed facts indicate the hearing
officer did not abuse his discretion in denying Mr. Davis's request
for continuance or in proceeding with the hearing in his absence.

The hearing officer gave Mr. Davis every opportunity to submit
the information he requested in order to grant a continuance.  By
letter dated June 17, 2008, the hearing officer told Mr. Davis that
he would have to file a motion to extend the decision and include

> specific facts about the exact nature of his medical
> condition, which physicians have advised him not to
> proceed in these matters and why they gave him that
> advice, and the exact short amount of time needed until
> the parent can either obtain legal counsel or else resume
> participation as a pro se litigant.  I do not have the
> option of continuing these matters indefinitely as the
> parent requests.  While I do not wish to cause the parent
> physical harm, the timelines of these cases serve

important public policy concerns and only a short
continuance would be appropriate.

(Court's Exhibit 18).

Mr. Davis filed the requisite motion, and stated that he was
"physically and psychologically ill, and under the care of a
physician and psychologist in South Charleston and Charleston, West
Virginia, respectively," that he "was placed on medical leave June
11, 2008, and is not expected to return to work in the near
future," "has been prescribed various medications" and "has been
advised, for physical and mental health reasons, to not proceed
further with current pro se litigation involving the School until
such time that the father's health conditions improve." (Court's
Exhibit 19.)

In ruling on the motion on June 20, 2008, the hearing officer
found that Mr. Davis failed to "state precisely what his medical
conditions are or why they necessitate his not participating in the
above-referenced proceedings." (Court's Exhibit 20.) The hearing
officer wrote that he could not ascertain when Mr. Davis would be
in a position to continue, and that he could not grant an
indefinite continuance: "As I have explained in previous
correspondence, indefinite continuances are in opposition to the
public policy reasons underlying the timelines in these cases. The
parent's failure to cooperate negates any basis for a lengthy
continuance." (Court's Exhibit 20.) Nevertheless, the hearing
officer extended the deadline for his decision by thirty days. The

27

hearing officer wrote that a five week extension from the time Mr. Davis notified him of his condition would give Mr. Davis sufficient time to either bring his medical condition under control or retain a lawyer.  (Court's Exhibit 20.)  The hearing officer also directed the parties to conduct a status conference by July 21, 2008. (Court's Exhibit 20.)

By letter dated July 21, 2008, counsel for Defendant wrote to the hearing officer that he had not heard from Mr. Davis about scheduling the status conference.  (Court's Exhibit 22.)

By pleading dated July 21, 2008, Mr. Davis moved for a continuance of the status conference and to extend the hearing officer's decision.  Mr. Davis noted that he had been under the care of a physician, a psychologist, a counselor, a pain specialist and a surgeon for six adverse physical or mental health conditions, was taking prescribed medication and on extended medical leave from his job, but that he did not feel he was required to provide information about his private medical condition beyond what he had already provided.  (Court's Exhibit 23.)

By letter dated July 22, 2008, the hearing officer stated that Mr. Davis's motion had been received on July 23, 2008[6], after the deadline for the status conference and, as a result, denied it as untimely.  The hearing officer set the hearing from August 18-22,

---

[6]  As noted above, the hearing officer's letter is dated and was faxed on July 22, 2008, and it appears this is a typographical error in the hearing officer's letter.

2008.  (Court's Exhibit 24.)

The parties did not file a prehearing memorandum, and the hearing was convened on August 18, 2008.  When Mr. Davis did not appear at the hearing, the hearing officer made multiple attempts to contact him and, after the hearing, provided him with the transcript and gave him the opportunity to submit a posthearing brief.  (Court's Exhibits 27, 29.)

In his decision finding that J.D. had not been denied a FAPE, the hearing officer explained that he declined to dismiss the due process complaint despite Mr. Davis's failure to comply with orders and attend the hearing in light of Mr. Davis's pro se status.  Instead, he proceeded with the hearing in Mr. Davis's absence, but invited him to submit a posthearing brief.  (Court's Exhibit 30, p. 18.)  Mr. Davis did not submit a posthearing brief or any other information to the hearing officer.

The federal and State regulations at 34 C.F.R. § 300.515(c) and W. Va. Code St. R. § 126 C.S.R. 16(K), which are identical, make clear, particularly when read in conjunction with L.C. and K.C., that the applicable regulations "explicitly [allow] parties to request an extension of time, and **[give] hearing officers discretion to grant an extension upon request**." (emphasis added). L.C. and K.C., 188 F. Supp.2d at 1338.

A review of the undisputed facts in this matter reveals that Mr. Davis was not responsive to the hearing officer's multiple

efforts to ascertain the nature of his health condition, and that the hearing officer granted one extension even when that information was not provided by Mr. Davis. Indeed, the original hearing was scheduled for May 27-30, 2008, was continued to June 24-27, 2008, at Defendant's request and continued again at Mr. Davis's request to August 18-22, 2008.

Furthermore, the hearing officer made every attempt to secure Mr. Davis's attendance at the hearing on August 18, 2008. While the hearing officer ultimately proceeded with the hearing and rendered a decision, he gave Mr. Davis an opportunity to submit a posthearing brief, which he declined to do. While Mr. Davis's health situation certainly is unfortunate, it was not unreasonable or an abuse of discretion for the hearing officer to request additional information, which could have been provided in camera to the hearing officer to protect Mr. Davis's privacy. Instead, Mr. Davis essentially became incommunicado and dropped out of participation in the process. The court respectfully recommends that the undisputed facts, coupled with the applicable case law and regulations, direct a finding that the hearing officer did not abuse his discretion in this matter in denying the requests for a continuance and in proceeding with the hearing. Therefore, Defendant is entitled to judgment as a matter of law.

**Recommendation**

It is respectfully recommended that the presiding District

30

Judge **GRANT** the Motion for Summary Judgment filed by the Board of Education of the County of Kanawha.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Mr. Davis and counsel of record.

    November 4, 2009                          
_Mary E. Stanley_
              Date                                   Mary E. Stanley
                                       United States Magistrate Judge